UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROTH GRADING, INC., | No. 2:20-cv-00336-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| MARTIN BROTHERS CONSTRUCTION, | |
| Defendant. | |

This is a commercial contract dispute. Roth Grading, Inc. (Roth) sued Martin Brothers Construction (Martin) after Martin backed out of a deal to buy construction equipment. Martin moves for judgment on the pleadings, arguing there was either no contract or Roth filed this lawsuit after the limitations period had run. Mot. for J. on the Pleadings, ECF No. 30, at 1.

The court heard oral argument by videoconference on August 4, 2020. Hr'g Minutes, ECF No. 40. Aaron Smeall and I. Hooshie Broomand appeared for plaintiff; James Kirby, II and Lanny Winberry appeared for defendants. *Id.* As explained further below, the motion is granted: there was a contract, but Roth sued too late.

I.   FACTS AND PROCEDURAL HISTORY

Roth sells impactors, which use a large, rotating drum to break concrete, compact soil and perform similar tasks. First Am. Compl. ("FAC") ¶ 4, ECF No. 34. Martin first

1

contacted Roth about buying an impactor about four years ago. *Id.* ¶ 5. After some negotiations, they agreed on a price and delivery date. *See id.* ¶¶ 4–9. A few days later, Roth signed a one-page "Contract Purchase Order" that included some basic information about the impactor, the agreed price, shipping arrangements, an expiration date and similar terms, and then emailed it to Martin. *Id.* ¶ 10 & Ex. A. After a few more days, Martin emailed back, attaching a signed copy of the purchase order and a form of its own. *See id.* ¶¶ 12–14 & Ex. B.

Martin's form is much more detailed than Roth's. It includes several paragraphs of tightly packed text on its final page. *See id.* Ex. B at 3. The first paragraph of these additional terms is at the center of the parties' current dispute:

> **1. Seller's Acceptance.** Seller shall be bound by this Purchase Order, its terms and conditions and all attachments hereto and/or documents referenced herein (collectively, "Order") upon Seller's acceptance of the Order signified by the first to occur of Seller's execution of the Order or upon commencement of performance hereunder (including, without limitation, fabrication of goods to be provided by Seller). Any additional or different terms proposed either orally or in writing by the Seller (e.g. contained in any Seller proposal or forms contract) or accompanying Seller's performance are rejected and shall be of no force or effect unless expressly assented to in writing by Buyer.

*Id.* The Martin form also included a term allowing Martin to terminate the contract:

> **7. Changes and Rights to Terminate.** . . . Buyer, by written directive, may terminate or suspend at its convenience all or any portion of the Order not delivered and accepted by Buyer as of the date of termination or suspension of the Order. . . .

*Id.* In addition, the Martin form stipulated a one-year statute of limitations for any action by Roth:

> **11. Limitations and Liability.** . . . Any action by Seller against Buyer arising from this Order, including Buyer's breach thereof, must be commenced within one (1) year after the cause of action has occurred or shall be deemed waived. . . .

*Id.*

A week after Martin sent the email with its purchase order, while Roth was "making preparations to ship the Impactor," Martin called and said that it "no longer wanted an Impactor" and cancelled its order as a result of "difficulties with [its] current project" *Id.* ¶ 16.

2

1  Roth sued Martin in Nebraska state court, but that court determined it lacked personal jurisdiction
2  over Martin.  *See Roth Grading, Inc. v. Martin Bros. Constr.*, 916 N.W.2d 70, 81–82 (Neb. App.
3  2018).  Roth filed its federal complaint here fifteen months after the Nebraska litigation became
4  final.  *See* Defs.' Ex. 5–7, ECF No. 30-1 (Nebraska court records[1]); ECF No. 1.  Roth asserts a
5  single claim for breach or anticipatory breach of contract.  FAC ¶ 22.  It claims Martin's
6  cancellation cost it the profits it would have made on the sale as a lost-volume seller,[2] with
7  damages totaling $88,600.  *Id.* ¶¶ 25–26.  After Roth filed an amended complaint as the parties
8  agreed, *see* ECF Nos. 28, 34, Martin filed its current motion for judgment on the pleadings, Mot.,
9  ECF No. 30, which is now fully briefed.  *See* Opp'n, ECF No. 37; Reply, ECF No. 38.

## II.  LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion may raise the defense of failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(h)(2)(B).  The same standard of review applies to motions brought under Rule 12(c) or Rule 12(b)(6), and many of the same rules delineated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply to Rule 12(c) motions.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) . . . .").  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  The court "must accept all factual

---

[1] The court takes judicial notice of these records.  *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

[2] "If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."  U.C.C. § 2-708 (2).

3

1 allegations in the complaint as true and construe them in the light most favorable to the non-
2 moving party." *Id.*

III. DISCUSSION

Federal district courts sitting in diversity apply the substantive law of the state in which the court is located. *See First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015). The parties agree here that California contract law governs their dispute. *See* Mot. at 4; Opp'n at 3. The parties also agree they both are "merchants" and the court should apply the interpretive rules of the California Uniform Commercial Code (U.C.C.) to their competing purchase agreements. *See* Mot. at 4; Opp'n at 3. They dispute whether a contract was formed and if so whether this action is barred by the applicable limitations period. The court addresses each dispute below.

A. Contract Formed?

Roth can state a claim for breach of contract only if there was a contract. *See Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). And a contract can only have formed if an offer was accepted. *See Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 99 (1977). The first question to answer in determining whether there was a contract is did Martin accept Roth's offer, or did it simply return a counteroffer? Even if Martin's purchase order was not an acceptance and merely a counteroffer, however, Roth would nevertheless state a claim if it accepted Martin's counteroffer. Thus, the second question is whether Roth accepted?

The answer to the first question is "no." Martin did not accept Roth's offer by sending its purchase order in response to Roth's order. This is not because Martin's purchase order contained different terms than Roth's form. California, as have many other jurisdictions, recognizes the common-law "mirror image" rule, that an offer and acceptance must contain identical terms, is impractical in the commercial context, and prevents a contract from forming even if the parties intended to be bound and understood they had closed the deal. *See Steiner*, 20 Cal. 3d at 99. The California Commercial Code instead provides a more flexible standard: "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless

4

acceptance is expressly made conditional on assent to the additional or different terms." Cal. Com. Code § 2207(1).

At first blush Martin's Purchase Order might appear to operate as an acceptance or confirmation under section 2207; it is a written confirmation of a purchase, and Martin sent it soon after receiving Roth's offer. But the first paragraph of Martin's additional terms makes Martin's acceptance expressly conditional on Roth's assent to those additional terms. Martin first stated the purchase order would only bind Roth if Roth accepted the additional terms. *See* FAC Ex. B at 3 ¶ 1 ("Seller shall be bound by this Purchase Order, its terms and conditions and all attachments hereto and/or documents referenced herein (collectively, "Order") upon Seller's acceptance of the Order . . . ."). Martin then explained how Roth could accept, by executing the Order or commencing performance. *See id.* ("Seller's acceptance of the Order [is] signified by the first to occur of Seller's execution of the Order or upon commencement of performance hereunder . . . ."). And finally, Martin described how any further terms that Roth had proposed or might propose were not part of the contract. *See id.* ("Any additional or different terms proposed either orally or in writing by the Seller (e.g. contained in any Seller proposal or forms contract) or accompanying Seller's performance are rejected and shall be of no force or effect . . . ."). In other words, Martin's purchase order did not operate as an acceptance under Commercial Code section 2207(1), and no contract was formed when Martin sent that purchase order. *See* FAC ¶ 15.

The California Court of Appeal's decision in *Lounge-A-Round v. GCM Mills, Inc.*, 109 Cal. App. 3d 190 (1980), supports this conclusion, but not for the reasons Martin contends, *see, e.g.*, Reply at 3. In *Lounge-A-Round*, the buyer had made an offer that expressly limited acceptance to that offer's terms. *See id.* at 195. For this reason, the court held that a follow-up confirmation from the seller did not add a new arbitration clause to the contract. *See id.* at 197 (citing U.C.C. § 2-207(2)(a)). That is, there was a contract, but the additional terms did not become part of that contract. *See id.* Here, Martin contends exactly the opposite: that there was no contract, but if there were, then its additional terms were part of the contract. *See* Reply at 3.

A different statutory provision, Commercial Code section 2207(1), is also at issue here. Martin contends its purchase order made acceptance expressly conditional on "assent to

5

[its] additional or different terms." *See id.* That said, Martin and the buyer in *Lounge-A-Round* are in some respects analogously situated: Martin must show acceptance was expressly conditional, and in *Lounge-A-Round* the buyer had to show its offer expressly limited acceptance. *Compare* U.C.C. § 2-207(1)(a) *with* Cal. Com. Code § 2207(1). Because the language in *Lounge-A-Round* is similar to the language that Martin and Roth dispute here, and because that language was expressly limiting in *Lounge-A-Round*, that case ultimately supports Martin's argument that its purchase order was expressly conditional and that its purchase order did not operate as an acceptance under section 2207(1). Martin made a counteroffer.

With this clarification, did Roth accept Martin's counteroffer? It did. Martin's purchase order stated that Roth could signify Roth's acceptance either by executing the order or commencing performance. Pl.'s Ex. B at 3. In the complaint, Roth alleges it was "making preparations to ship the Impactor." FAC ¶ 16. The court must accept that allegation as true and construe it in the light most favorable to Roth. *See Fleming*, 581 F.3d at 925. The most favorable interpretation of the allegation that Roth was "making preparations" is that Roth had commenced performance and thus had accepted Martin's offer. A contract was formed.

Martin cannot avoid this conclusion by arguing its offer "lapsed" under California Commercial Code section 2206(2). *See* Mot. at 7; Reply at 4. Section 2206(2) allows a person to treat an offer as expired if the person who received the offer does not "give notice of acceptance within a reasonable time." According to Roth's complaint, the parties had been exchanging calls and emails as often as every day. *See* FAC ¶¶ 4–15. That daily frequency, Martin contends, shows that Roth's five-day silence after receiving Martin's purchase order was not a "reasonable time." Mot. at 6–7. But as noted, the court must draw inferences in Roth's favor. Martin cites no authority for the proposition that a five-day delay was too long as a matter of law, and the court is aware of none.

For all the reasons reviewed above, a contract was formed.

B.  Limitations Period

Even if the parties reached an agreement and a contract was formed, as here, the court must grant Martin's motion if Roth's action is precluded by the applicable limitations

6

period. As noted, the Martin form did include a one year limitations period. Roth does not dispute that it filed its complaint more than a year after its breach claim accrued. *See* Opp'n at 7.

In contract negotiations between merchants, any additional terms in an acceptance "are to be construed as proposals for addition to the contract" that become part of the contract between merchants, except in the following circumstances: (a) when "the offer expressly limits acceptance to the terms of the offer"; (b) when the additional terms would "materially alter" the contract; or (c) when one party has objected to the additional terms and notified the other party within a reasonable time. U.C.C. § 2-207(2)(a)–(c). "In order to become part of the agreement," the additional term "must not fall within *any* of the categories defined" by U.C.C. § 2-207. *Steiner*, 20 Cal.3d at 101 (emphasis in original). "California Uniform Commercial Code section 2725, subdivision (1) provides that the parties to a sales contract may reduce the statutory four-year period of limitations to one year" without "materially altering" the contract. *Therma-Coustics Manufacturing, Inc. v. Borden, Inc.*, 167 Cal. App. 3d 282, 296 (1985) (citing Cal. Comm. Code § 2725(1)).

The additional term here, a one-year limitation period, fits none of the exceptions listed above and is allowed under the U.C.C. Roth's purchase order did not "expressly limit acceptance to the terms of the offer." Cal. Com. Code 2207(2)(a); *see also* Pl.'s Ex. A (Roth Purchase Order). So, exception (a) does not apply. And there is no allegation of an objection, so exception (c) does not apply either. Exception (b) makes for a closer call, at least in the abstract—does a change in the limitation period for filing a lawsuit about the contract "materially alter" that contract? But the California Court of Appeal has held that it does not. *See Therma-Coustics Manufacturing, Inc.*, 167 Cal. App. 3d at 296. And in that case, materiality was a question of law, not fact, so Roth cannot avoid judgment on the pleadings by arguing that a jury should decide whether the change was material. *See* Opp'n at 6. As a result, the contract between Martin and Roth included a one-year limitations period.

Roth filed this action more than a year after the cause of action occurred, even after tolling the limitations period while Roth pursued a claim in Nebraska state court. *See Addison v. State of California*, 21 Cal. 3d 313, 317–18 (1978) (holding a statute of limitations for

filing suit may be tolled while plaintiff pursues the claim in another forum).  On August 7, 2018, tolling ended when the dismissal of Roth's claim became final after the Nebraska trial court entered the Nebraska Supreme Court's mandate.  Ex. 7 at 1.  Plaintiff did not file this action in federal court until January 8, 2020, about fifteen months later.  *See generally* Compl.  Martin is thus entitled to judgment on the pleadings.  *See, e.g.*, *Espinoza v. Claremont First St. Inv'rs*, No. 10-03526, 2011 WL 13214103, at *2 (C.D. Cal. Feb. 15, 2011) (granting a motion for judgment on the pleadings because the claims in question were filed outside the applicable limitations period).  Because the court grants the motion on this basis, it does not reach the parties' arguments regarding other terms included in Martin's purchase order.

IV.     CONCLUSION

For the reasons above, the court GRANTS defendant's motion for judgment on the pleadings.  This order resolves ECF No. 30.  The clerk's office is directed to CLOSE this case.

IT IS SO ORDERED.

DATED: October 6, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE