UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROTH GRADING, INC., | No. 2:20-cv-00336-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| MARTIN BROTHERS CONSTRUCTION, | |
| Defendants. | |

Martin Brothers Construction moves for an award of its attorneys' fees following judgment in its favor in this breach-of-contract dispute with Roth Grading, Inc. *See* Mot., ECF No. 43; Order (October 6, 2020) (Prev. Order) at 1, ECF No. 41. As explained in more detail below, **the motion is granted**: the contract in question includes an enforceable attorneys' fees provision, and the requested fees are reasonable.

I.    BACKGROUND

Roth sells heavy construction equipment, including "impactors." Prev. Order at 1. This litigation arose after Roth sent a contract purchase order to Martin for purchase of an impactor. *See* First Am. Compl. (FAC) ¶ 10, ECF No. 34; Roth Contract Purchase Order (Roth Form), Mot. Ex. 1 at 9,[1] ECF No. 43-1. Martin returned the purchase order with some additional terms, one of

---

[1] Citations to page in this document refer to page numbers applied to the upper right of each page by the court's CM/ECF system.

1

which provided that Roth could accept by beginning performance. FAC ¶¶ 12–14; Martin Construction Purchase Order (Martin Terms), Mot. Ex. 1 at 9–12, ECF No. 43-1. While Roth was "making preparations to ship the impactor," Martin cancelled the order. FAC ¶ 16.

Roth sued Martin in Nebraska state court for breach of contract, but that court determined it lacked personal jurisdiction over Martin, and Martin successfully defended the resulting dismissal on appeal. *See Roth Grading, Inc. v. Martin Bros. Constr.*, 916 N.W.2d 70, 81–82 (Neb. App. 2018). Roth then sued Martin in the United States District Court for the District of Nebraska, which transferred the case to this court. Order at 1–2 (February 13, 2020), ECF No. 12. Woods Aitken, LLP, represented Martin in the Nebraska courts. Mot. at 8. Nageley, Kirby & Winberry, LLP, represents Martin in this court. *Id.* at 9.

Roth amended its complaint after the transfer, *see* ECF Nos. 28, 34, and Martin moved for judgment on the pleadings, ECF No. 30. The court granted the motion. Prev. Order at 1. Roth and Martin had formed a contract because Martin's additional terms were a counteroffer under the California Commercial Code and because Roth had accepted the counteroffer by beginning to perform. *Id.* at 4–6. These additional terms included a one-year limitations period, and Roth's complaint was filed after that limitations period, so the complaint was untimely. *Id.* at 7–8.

Martin's additional terms also included a provision about attorneys' fees:

> **12. Disputes.** . . . In the event that either party becomes involved in litigation or arbitration arising out of this Agreement, the prevailing party shall be compensated for the cost of its participation in such proceedings, including the cost incurred for reasonable attorneys' fees and experts' fees.

Martin Terms at 12. Martin moves for an award of attorneys' fees under that provision. Mot. at 4, 7. Roth argues the contract did not include this fees provision, but it does not contest the reasonableness of the fees Martin requests. *See generally* Opp'n, ECF No. 44. Briefing is complete, and the court submitted the matter without hearing. *See* Reply, ECF No. 48; Minute Order, ECF No. 50.

## II.   LEGAL STANDARD

Federal district courts sitting in diversity apply the substantive law of the state in which the court is located. *See First Intercontinental Bank v. Ahn,* 798 F.3d 1149, 1153 (9th Cir. 2015).

1    In this matter, the parties agree California substantive law governs, including the California
2    Commercial Code.  *See* Prev. Order at 4.
3        In California, "[u]nder the American rule, each party to a lawsuit ordinarily pays its own
4    attorney fees." *Mountain Air Enter. LLC v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 751 (2017).
5    Parties can contract out of this general rule and agree that if litigation ensues, the prevailing party
6    will be awarded attorneys' fees. *Id.* (citing Cal. Civ. Proc. Code § 1021).  Thus, when presented
7    with a motion for attorneys' fees, the court must determine whether the parties made such an
8    agreement. *R.W.L. Enter. v. Oldcastle, Inc.*, 17 Cal. App. 5th 1019, 1025 (2017) (citing *Mountain
9    Air*, 3 Cal. 5th at 752).
10       If the court finds such an agreement, it must determine the appropriate amount of
11   attorneys' fees to award the prevailing party.  In performing this task, California courts use the
12   lodestar approach: multiplying the number of hours reasonably expended by a reasonable hourly
13   rate. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001).  To determine whether the number of
14   hours is reasonable, the court considers a number of factors, including "the nature of the
15   litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed,
16   the attention given, the success or failure, and other circumstances in the case." *PLCM Grp. v.
17   Drexler*, 22 Cal. 4th 1084, 1096 (2000) (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623–24
18   1976)).  A reasonable hourly rate is "that prevailing in the community for similar work." *Id.* at
19   1095.  Generally, the relevant community is the one "in which the district court sits." *Schwarz v.
20   Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (citation omitted).  The court
21   may also adjust the lodestar rate upward or downward to account for the unique circumstances of
22   the case, such as novel and difficult questions or counsel's skill. *See Ketchum*, 24 Cal. 4th at
23   1132.
24   **III.   ANALYSIS**
25       As described above, the court must determine (A) whether the parties' contract included
26   the attorneys' fee provision, and if so (B) whether the requested fee is reasonable.

A.   **Whether the Contract Included an Attorneys' Fees Provision**

When, as here, contracting parties have exchanged conflicting forms, "[s]ection 2207 of the California Commercial Code controls contract interpretation." *Textile Unlimited, Inc., A..BMH and Co.*, 240 F.3d 781, 787 (2001) (footnote omitted); *accord Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir. 1986) ("If the offeror assents, the parties have a contract and the additional terms are a part of that contract."). Section 2207 replaces the "mirror image rule" in the commercial context. Prev. Order at 4 (citing *Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 99 (1977)). "Under § 2207(1), an acceptance will operate to create a contract even if additional or different terms are stated *unless* the acceptance is expressly conditioned on assent to the new terms." *Textile Unlimited*, 240 F.3d at 787 (emphasis in original). "[I]f the acceptance is expressly conditioned on the offeror's assent to the new terms, the acceptance operates as a counteroffer. If the counteroffer is accepted, a contract exists and the additional terms become part of the contract." *Id.* (citing *Diamond*, 794 F.2d at 1443).

As this court explained in its previous order, Martin's additional terms acted as a counteroffer, Roth began to perform, and performance was unequivocal acceptance under the counteroffer's express terms. Prev. Order at 6. Roth and Martin thus formed a contract based on that counteroffer, which included the attorneys' fees provision. Because their contract included an attorneys' fee provision, they agreed to an exception from the general rule against fee awards, and Martin is entitled to its reasonable fees.

This conclusion—which results from the Ninth Circuit's binding interpretation of California law—likely forecloses any argument that the contract had no fee provision. *See Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (noting Ninth Circuit's interpretation of state law is "binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect" (citation and quotation marks omitted)). Roth argues, however, that the addition of a contract term awarding attorneys' fees "materially altered" the contract's terms, which, if true, would prevent those terms from becoming part of the contract under California Commercial Code section 2207(2)(b), if that provision is applicable. *See* Opp'n at 4–6. This argument draws on this court's previous order,

4

which considered whether the limitations period in the counteroffer materially altered the agreement. *See* Prev. Order at 6–8.[2]

Even if section 2207(2)(b) were to apply, the result here would be the same. Section 2207(2) states that, between merchants, additional terms in an acceptance "become part of the contract unless . . . [t]hey materially alter it." Cal. Com. Code § 2207(2)(b).[3] An additional term materially alters a contract when it "result[s] in surprise or hardship if incorporated without express awareness by the other party." *C9 Ventures v. SVC–W., L.P.*, 202 Cal. App. 4th 1483, 1506 (2012) (alterations in original) (citation omitted).

It is undisputed here that the parties are "merchants" and that the fee provision in question is "additional." What remains, then, is to decide whether that provision "materially alter[ed]" the contract under section 2207(2)(b). Several California federal district courts and at least one California appellate court have held that, as a rule, attorneys' fees provisions do not "materially alter" an agreement under section 2207(2)(b). *See Exp. Dev. Can. v. E.S.E. Elec.*, No. 16-02967, 2017 WL 3868795, at *15 (C.D. Cal. Sept. 5, 2017) (collecting authority); *Boyd v. Oscar Fisher Co.*, 210 Cal. App. 3d 368, 379 (1989) (citing *S. Bay Transp. Co. v. Gordon Sand Co.*, 206 Cal. App. 3d 650, 660 (1988)). As the district court explained in *Export Development Canada*, despite the American rule, in this situation, "[t]he possibility of legal expenses . . . is not so unusual as to cause surprise . . . . The concepts of legal action in pursuit of unpaid debts . . . [is] common in business transactions and professional parlance." 2017 WL 3868795, at *15.

The only contrary California authority appears to be an unpublished, nonprecedential decision of a California Court of Appeal, which does not cite *Boyd* and which was decided in circumstances not comparable to those here. *See MGM Transformer, Inc. v. Rosen Elec.*, No. B233927, 2013 WL 359647, at *6–7 (Cal. Ct. App. Jan. 30, 2013). The case was litigated all the

---

[2] The Ninth Circuit's opinions in *Textile Unlimited* and *Diamond* likely show that this court's discussion of 2207(2) in its previous order was unnecessary. But as discussed below, the result is the same whether or not section 2207(2) applies. Neither party requests reconsideration. The court thus declines to revisit its previous order.

[3] Subsections 2207(2)(a) and (c) also include exceptions, but those exceptions are not relevant here. *See* Prev. Order at 7.

5

way through jury trial, and yet no evidence suggested the adverse party had even been aware of the fee provision in question. *See id.* at *7. Here, by contrast, Roth itself alleged it received a pdf document of the additional terms by email on August 9, 2016 and that a contract formed; it attached the contested fee provision to its operative complaint. *See* FAC ¶¶ 13–17; *id.* Ex. B, ECF No. 34-2. That provision did not materially alter the parties' contract.

Roth contends otherwise, relying primarily on arguments distinguishing the California Court of Appeal's decision in *Boyd*, cited above. *See* Opp'n at 4–5 (citing 210 Cal. App. 3d 368). According to Roth, "substantial evidence" showed the adverse party in *Boyd* had "reviewed the attorney fee." *Id.* at 5. That was not the Court of Appeal's holding. Rather, the "substantial evidence" in question showed "the parties were merchants who added terms to the [relevant] agreement by subsequent notices," and the adverse party conceded it had received and read those invoices. 210 Cal. App. 3 at 379. Nothing in the agreement precluded a "supplemental agreement on attorney fees." *Id.* The same is true here: nothing in Roth's original purchase order precluded a later agreement on attorneys' fees, and Roth conceded in its operative complaint that it received the additional terms it now disputes and that a contract was then formed. *See* FAC ¶¶ 13–17.

In sum, Martin and Roth formed a contract that entitled the "prevailing party" in any litigation to its reasonable attorneys' fees. Martin prevailed here by obtaining judgment in its favor, and it prevailed in the Nebraska litigation by obtaining a jurisdictional dismissal and successfully defending that dismissal on appeal. Martin is thus entitled to an award of reasonable attorneys' fees.

**B.    Whether Martin Has Requested Reasonable Attorneys' Fees**

A party who requests attorneys' fees bears an initial burden to show "the fees it seeks are reasonable." *Ctr. for Biological Diversity v. Cty. of San Bernardino*, 188 Cal. App. 4th 603, 615 (2010) (quoting *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 4, 98 (2009)). Courts are loath to second-guess a "winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (2008). But "'padding' in the form of inefficient or duplicative efforts is not subject to compensation."

6

1  *Ketchum*, 24 Cal. 4th at 1132.  It is the opposing party's burden to show a requested fee is
2  "excessive because too many hours or work are claimed." *Premier Med. Mgmt., Inc. v. Cal. Ins.*
3  *Guar. Ass'n*, 163 Cal. App. 4th 550, 564 (2008).  To carry this burden, it must point "to the
4  specific items challenged, with a sufficient argument and citations to the evidence." *Id.*
5        Here, Martin's Nebraska and California counsel dedicated the following hours to this
6  litigation:

**Woods Aitken (Nebraska Courts)**

| | |
|---|---|
| 10.9 | Investigation/communication with client |
| 81.5 | Research, draft and edit trial court motions (2) and appellate briefs |
| 8.4 | Prepare for and attend hearings |
| 2.0 | Communications with court and opposing counsel |
| 102.8 | Total Hours |

**Nageley, Kirby & Winberry, LLP (Eastern District of California)**

| | |
|---|---|
| 6.7 | Investigation/communication with client |
| 90.5 | Research, draft and edit an answer, two motions, two memoranda, and one reply |
| 1.8 | Prepare for and attend hearing on motion |
| 11.6 | Communications with court and opposing counsel (including meet and confer) |
| 53.3 | Preparation of fee motion and reply brief |
| 163.9 | Total Hours |

7  *See* Mot. at 9–10; Second Suppl. Decl. ¶ 4 & Ex. (invoice), ECF No. 48-1.
8        Martin also has filed detailed billing statements.  Mot. Ex. 4, ECF No. 43-1.  The billing
9  statements include line-by-line descriptions of the time its attorneys dedicated to this litigation,
10 and the hourly entries are broken down into tenths of an hour.  *See generally id.*  Martin has
11 provided two attorneys' declarations.  *See generally* Mot. Exs. 2–3.  According to these
12 declarations, Martin has not sought fees for the time of its in-house attorneys, and it has already
13 paid its outside counsel the fees they request here, excluding the fees incurred litigating the

7

1  current fee dispute. Roth does not contest the reasonableness of these hours or argue counsel
2  dedicated an excessive number of hours to this case.

3  The number of hours Martin requests is reasonable. Its detailed hourly records support
4  this finding. *See, e.g.*, *PLCM*, 22 Cal. 4th at n.1 ([C]ontemporaneous records . . . of hours spent
5  on a case involving a . . . request for attorney fees . . . facilitate accurate calculation of the
6  lodestar and minimize possible inaccuracies in reconstructing time spent . . . ."). So does
7  Martin's success in Nebraska trial and appellate courts, in Nebraska federal district court and in
8  this court. Martin's decisions to pay its outside counsel's fees and not to request fees for hours by
9  its in-house attorneys also suggest the hours billed were reasonable. *See* Kirby Decl. ¶¶ 3, 10,
10 ECF No. 43-1; Vint Decl. ¶ 10, ECF No. 43-1; AP Vendor Payment History (Martin Payments),
11 Mot. Ex. 4 at 27, ECF No. 43-1. Roth's decision not to contest these hours supports Martin's
12 position further; its silence waives any opposition. *See John–Charles v. California*, 646 F.3d
13 1243, 1247 n.4 (9th Cir. 2011) (undeveloped argument waived); *Navellier v. Sletten*, 262 F.3d
14 923, 948–49 (9th Cir. 2001) (issue not supported by argument or citations to authorities and
15 supporting documents in record is waived).

16 The court thus turns to Martin's proposed hourly rate. "[D]etermining an appropriate
17 'market rate' for the services of a lawyer is inherently difficult." *Camacho v. Bridgeport Fin.,*
18 *Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).
19 To determine a reasonable rate, a court may refer to "[a]ffidavits of the . . . attorneys regarding
20 fees in the community" and rates paid in other cases. *United Steelworkers of Am. v. Phelps*
21 *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "[A] more skillful and experienced attorney
22 will command a higher hourly rate." *Ketchum*, 24 Cal. 4th at 1138–39.

23 Because the representation spanned two forums, the court analyzes hourly rates separately
24 for each forum. Martin's counsel billed at the following hourly rates, with increases attributable
25 to changes in counsel's rates between 2017 and 2020:

**Omaha, Nebraska**

| | | |
|---|---|---|
| Patrick Vint | Woods Aitken | $215, $225, $240 (Mot. Ex. 4) |
| Todd Weidemann | Woods Aitken | $290, $295, $300 (*Id.*) |

|  |  |  |
|---|---|---|
| Paralegal Time | Woods Aitken | $115 (*Id.*) |

**Sacramento, California**

|  |  |  |
|---|---|---|
| James Kirby | NK&W | $300 (Mot. Ex. 5) |
| Paralegal Time | NK&W | $75 (*Id.*) |

Mr. Vint graduated from the University of Iowa College of Law in 2006 and has been practicing for more than 15 years. He specializes in commercial litigation, among other practices. Mot. Ex. 3 at 24. Mr. Weidemann earned his J.D. from Creighton University and has been practicing for more than 20 years. He also specializes in commercial litigation. *Id.* at 25. Mr. Kirby graduated from the University of the Pacific, McGeorge School of Law in 1979 and has been practicing for over 40 years. He specializes in complex business litigation. *Id.* at 18. Counsel submitted declarations affirming their belief their requested rates are within the ranges normally charged for similar work in Omaha and Sacramento. Kirby Decl. ¶ 10; Vint Decl. ¶ 10.

These rates are in fact reasonable given counsel's experience, their practice and the subject matter of this litigation. Courts have recently awarded similar rates in comparable cases in both Nebraska and this district. *See, e.g.*, *Gruttemeyer v. Transit Auth. of City of Omaha*, No. 18-0070, 2020 WL 6741657, *1–2 (D. Neb. Nov. 17, 2020), *appeal filed*, No. 20-3576 (8th Cir. Dec. 11, 2020); *Johnson v. Shree Rang, LLC*, No. 18-0917, 2020 WL 5202068, *4 (E.D. Cal. Sept. 1, 2020); *Heffington v. FCA US LLC*, No. 17-00317, 2020 WL 5017610, *8 (E.D. Cal. Aug. 25, 2020); *Tramp v. Assoc. Underwriters, Inc.*, No. 11-0371, 2019 WL 3068107, *6 (D. Neb. July 12, 2019). Paralegal time in both jurisdictions is also often billed at $75 per hour or more. *See Timmerman Starlite Trucking, Inc. v. Ingredion Inc.*, No. 19-01876, 2020 WL 6158241, at *4 (E.D. Cal. Oct. 21, 2020); *Gruttemeyer*, 2020 WL 6741657, at *1–2. Roth does not contest the reasonableness of these rates, and Martin actually paid them without knowing the outcome of this motion, which suggests further that the proposed hourly rates are reasonable. *See Stonebrae, L.P. v. Toll Bros.*, No. 08-0221, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) ("The fact that the fees in question were actually paid by a party

employing business judgment nonetheless adds weight to the presumption of reasonableness."); Kirby Decl. ¶ 7; Vint Decl. ¶ 7; Martin Payments at 27.

Martin does not request an adjustment to the lodestar figure, and the court finds that none is necessary.

**IV.   CONCLUSION**

The motion for attorneys' fees is **granted**.  **Martin is awarded $71,279.43.**  *See* Mot. at 1 (requesting $55,514.43 for time spent on matters other than the motion for fees); Second Suppl. Decl. ¶ 4 (requesting $15,765.00 for time litigating motion for fees).

This order resolves ECF No. 43.

IT IS SO ORDERED.

DATED:  February 9, 2022.

CHIEF UNITED STATES DISTRICT JUDGE